IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2025

## STATE OF TENNESSEE v. CHRISTOPHE SWEARENGEN A/K/A CHRISTOPHER SWEARENGEN

**Appeal from the Criminal Court for Shelby County
Nos. 24 00500, 24 00068, 24 00069     Paula L. Skahan, Judge**

_____

### No. W2025-00179-CCA-R3-CD

_____

Defendant, Christophe Swearengen, pled guilty to one count of aggravated assault, one count of theft of property over $10,000, one count of aggravated burglary, and one count of being a convicted felon in possession of a firearm. The trial court sentenced Defendant to five years' probation. After a revocation hearing, the trial court fully revoked Defendant's probation for violating the conditions of his probation and ordered him to serve the remainder of his sentence in incarceration. Defendant appeals, arguing that the trial court abused its discretion by fully revoking his probation because his violation constituted his first technical violation. The State agrees. After review, we reverse the judgment of the trial, reinstate Defendant's probationary sentence, and remand the case for the trial court to determine the appropriate consequence of Defendant's violation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed
and Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JOHN W. CAMPBELL, JR., J., joined.

Tony N. Brayton, Assistant Public Defender—Appellate Division (on appeal); Eran Julien, Assistant Public Defender (at revocation hearing), Memphis, Tennessee; Vincent Ores, Assistant Public Defender (at plea hearing), Memphis, Tennessee, for the appellant, Christophe Swearengen.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Theresa McCusker and Matthew Blissit, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On February 15, 2024, Defendant was indicted by a Shelby County Grand Jury in Case No. 24-00069 for one count of aggravated burglary, two counts of theft of property over $1,000, one count of burglary of a motor vehicle, and one count of theft of property under $1,000. On November 11, 2024, Defendant was indicted by a Shelby County Grand Jury in Case No. 24-00068 for one count of theft of property $10,000 or more. On the same day, a Shelby County Grand Jury indicted Defendant in Case No. 24-00500 for one count of attempted aggravated robbery, three counts of aggravated assault, one count of burglary of a motor vehicle, one count of being a convicted felon in possession of a handgun, and one count of theft of a firearm less than $2,500.

On April 22, 2024, the trial court held a sentencing hearing, where Defendant pled guilty to one count of aggravated assault in Case No. 24-0069, one count of theft of property over $10,000 in Case No. 24-00068, and one count of aggravated burglary and one count of being a convicted felon in possession of a firearm in Case No. 24-00500. The State agreed to dismiss the remaining charges and recommended an effective sentence of five years' incarceration. The trial court accepted the guilty plea but sentenced Defendant to an effective five years' probation. As a condition of his probation in each of Defendant's cases, the trial court required Defendant to "[c]omply with Community Linkage Plan for treatment of services and continue with rehabilitation treatment and monthly drug screens."

On August 8, 2024, a Probation Violation Warrant was issued against Defendant covering each of his cases. The accompanying affidavit alleged that Defendant violated Rule 10 of his probation—that he would "observe any special conditions imposed by the [trial court]"—by failing to comply with the Community Linkage Plan. Specifically, the affidavit explained that Defendant "left Eddie's Dwelling Place, a recommended treatment house through Community Linkage, . . . for a two-day weekend pass and did not return."

On January 13, 2025, the trial court held a revocation hearing to determine whether Defendant's probation should be suspended or revoked. Larry Orange, a mental health services coordinator for Shelby County Behavioral Health Services, testified that Defendant was referred to his program as part of Defendant's probation, and he provided Defendant with a Community Linkage Plan, which was "a list of recommended treatment." As part of this plan, Mr. Orange recommended that Defendant attend supportive living at Eddie's Dwelling Place for at least six months. Mr. Orange

described Eddie's Dwelling Place as being "normal" and "clean" and explained that it was the only facility that would care for Defendant because Defendant was in wheelchair.

On July 8, 2024, Mr. Orange prepared a Status Report on Defendant and delivered it to the trial court. In the report, Mr. Orange claimed that he "was notified by Eddie's Dwelling Place . . . that [Defendant] was given a two[-]day pass for June 29, 2024[,] and June 30, 2024[,] to go home and visit with family" because Defendant's brother died. However, Defendant did not return to Eddie's Dwelling Place and texted the staff to inform them that he would not be returning because "he had outgrown the facility." Eddie's Dwelling Place discharged Defendant because of his refusal to return.

Lashuna Evans, Defendant's probation officer, testified that she had last been in contact with Defendant a couple of weeks before the hearing. Defendant explained to Officer Evans that he left Eddie's Dwelling Place because it "had bedbugs and it was not properly cared for." Defendant asked Officer Evans whether he could be placed in another facility, but Officer Evans instructed Defendant to return to Eddie's and to contact his attorney because "that was out of [her] spectrum." Officer Evans testified that other than Defendant's failure to comply with Community Linkage Plan, he otherwise complied with the conditions of his probation.

Defendant testified that he left Eddie's Dwelling Place because he "got tired of getting bit by bedbugs." He explained that he informed the owner of Eddie's, Officer Evans, and Mr. Orange about the bedbugs, but Defendant claimed that they told him that they could not transfer him to a new facility because that was "up to the [c]ourts." Defendant also admitted that he stopped taking his prescribed medication for his mental health issues. After leaving Eddie's Dwelling Place, Defendant moved to his fiancé's house, but he continued to keep in contact with Officer Evans.

In determining whether to suspend or revoke probation, the trial court emphasized Defendant's eight prior felony convictions, including convictions for aggravated burglary, theft of a vehicle, and reckless endangerment. It also noted that Defendant suffered from mental health issues and needed to continue to take his prescribed medications. The trial court further highlighted that Defendant had failed to attend any of his required intensive outpatient meetings in May 2024 and that it had warned Defendant that another violation would result in the revocation of his probation. Finally, it explained, "the offer from the State was that [Defendant] could ask for probation as long as it included some type of . . . Community Linkage Plan." However, Defendant failed to comply. Based on the foregoing, the trial court fully revoked Defendant's probation and ordered him to serve the remainder of his sentence in incarceration. Defendant appealed.

*Analysis*

- 3 -

Defendant argues that the trial court abused its discretion by fully revoking Defendant's probation because Defendant's violation of his probation was his first technical violation. Therefore, Defendant argues that the trial court lacked authority to fully revoke his probation. The State agrees with Defendant. We agree with the parties.

The record supports Defendant did in fact violate his probation for a felony offense. Where the underlying offense is a felony, the probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. Defendant's violation was a technical violation. T.C.A. § 40-35-311(e)(2). A court may not revoke a probationary sentence for a felony offense "based upon one (1) instance of technical violation or violations." *Id*. § 311(d)(2). Furthermore, "a court may not order a felony probationer to serve the remainder of the sentence as the consequence of a technical violation until he or she is subject to a 'fourth or subsequent revocation.'" *State v. Rand*, 696 S.W.3d. 98, 103 (Tenn. Crim. App. 2024) (quoting T.C.A. § 40-35-311(e)(1)).

All agree that the trial court failed to perform its duty under the second step of *Dagnan*. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). Consequently, we reverse the judgment of the trial court and reinstate Defendant's probationary sentence. We also remand the case for the trial court to determine the appropriate consequence of Defendant's technical violation, which includes consideration of whether Defendant's violation constituted his first instance of a technical violation.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is reversed, Defendant's probationary sentence is reinstated, and this case is remanded for the trial court to determine the appropriate consequence of Defendant's violation.

_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE